Good morning, Your Honors. May it please the Court. My name is Iris Maw and my colleague, Danica Hoosh, and I will be representing Appellant Derrick Oden. We would like to resume the hearing. Thank you, Your Honor. I will start by discussing Appellant's Eighth Amendment claim and my colleague will address established law and how Appellant can overcome qualified immunity. Your Honor, in May of 2009, Appellant Derrick Oden appeared before appellees and transferred him to a facility in Kern Valley where he would be at specific risk of contracting valley fever, a deadly respiratory disease. At the time, appellees not only disregarded Appellant's medical documentation that stated he was at risk of valley fever, they also completely ignored his desperate in-person protests. So, Counsel, didn't the paperwork indicate that he was not at risk of valley fever? Your Honor, what is clear and undisputed about the medical documentation, the medical chrono, is that the words risk of valley fever were written there. As to the notation that was written after the words risk of valley fever, that is ambiguous and it's not actually clear and it's a disputed fact as to what it actually says. I'm not sure how to understand it says risk of valley fever, there's a Y slash N and then the N is circled, which seems to suggest no risk of valley fever and your argument is that's ambiguous because why? Your Honor, that's ambiguous because, first of all, at the motion to dismiss stage, that's not something that could have been resolved. We're saying that that's a factual dispute. This is evidenced by the fact that defendant appellees themselves offer contradicting claims. If you look at ER site 150, they actually claim that the notation is illegible and that was before the trial court. They said the signature was illegible. Your Honor, I believe they do say that the writing after risk of valley fever is illegible. What page do you say that is? ER 150. If we looked at it and decided we could read it, could we just disagree with that and say we think it's legible? Well, Your Honor, I think it's evident that there's a factual dispute here just even based on the fact that appellees at the lower court said that it was legible and then later on changed their position completely and in their answering brief at page eight then decided to claim that it was legible and they offered an interpretation. This description really suggests that there is a factual dispute here. At the time, the appellees, they disregard appellant's medical documentation, which indicated he was at risk. They ignored his desperate in-person protests. They knew specifically that he was at heightened risk and could have kept him at the facility in Lancaster, yet they deliberately transferred him to and kept him at Kern Valley State Prison. And a year later, appellant predictably contracted valley fever, which he suffers from to this day. As prison officials, appellees violated their long-established constitutional duty to protect an inmate from known risks to their health and safety. The standard for an Eighth Amendment violation is acting with deliberate indifference to expose an inmate to a substantial health risk. Appellant's documentation stated he was at risk and he begged them not to transfer him, citing his specific at-risk status. The appellees knew of a substantial risk, disregarded it, and appellant then got the disease. The Eighth Amendment violation could not be more clear. Your Honor, if you don't have any further questions about the Eighth Amendment, I would like to yield the floor to my colleague who will then speak on qualified immunity. All right. In this situation, any reasonable official would have known that they could not have transferred appellant to Kern Valley State Prison based on his medical record and his oral protests, indicating he was heightened risk of valley fever. This court has found in many instances that prison officials violate the Eighth Amendment when they know of and disregard a substantial risk of an inmate's health and safety in their decision to transfer the inmate. More specifically, it is well established that exposing an inmate to environmental conditions, which pose an unreasonable risk of serious damage to his future health through the possible contraction of a particular disease, states a claim under the Eighth Amendment. What case are you relying upon for your argument? Your Honor, we are relying on Hamilton v. Endell, which is a Ninth Circuit case, and Helling v. McKinney for the environmental exposure. What about Hines? Your Honor, we find that our case fits directly into Hines and we're not asking the court to do anything with Hines because in Hines, the court specifically states that there is an appropriateness of denying qualified immunity where the officials do not follow the orders of the platter receiver. Here, we are stating that the orders were defied because an appellant alleged that he fell under Criteria D of the November 2007 memorandum, which places him in the category of being excluded from a prison within the hyperendemic region. Therefore, Your Honor, Hines is applicable here in the sense that this court has suggested the appropriateness of denying qualified immunity in this specific case. The case law regarding Eighth Amendment violations resulting from an officer's disregard of a known substantial risk to an inmate's health and safety was clearly established in the circuit prior to the appellant's transfer in 2009. These precedents put appellees and any reasonable official on notice that transferring appellant to Kern Valley State Prison would violate his Eighth Amendment rights because of his specific and documented heightened risk of contracting valley fever. Where is it documented that he was at high risk of contracting valley fever? Where is that documented? Your Honor, that would be on his medical chrono. The clear language says risk of valley fever and that in addition to his oral protests, which this court has found in Lawley v. County of Orange, that oral protests could be taken as circumstantial evidence suggesting that or showing the level of knowledge that officials have. So that in addition to his oral protests, both at Kern Valley State Prison and at California State Prison Los Angeles County is enough to put them on notice of his documented risk of valley fever. But you're ignoring the yes slash no with no circle on that chrono. Your Honor, as my colleague has stated, there is a dispute as to the legibility of the language on the medical chrono in the lower court. What that goes to show is the level of knowledge that the officials had at that stage. What they could read was risk of valley fever. What they stated that was illegible was what they now claim is yes versus no. At that stage, they saw the court- But what are we to do if we can read it and it's plain? Your Honor, the court should also consider the fact that he protested orally twice to all defendants and said that he was at risk of valley fever and this court has found that such oral protests is enough to show that they had knowledge. Your Honor, if I may continue, I see that I've reached my time. You have. Could you briefly wrap up? Yes. The case law regarding Eighth Amendment violations show that here it's established that appellant's transfer in 2009 was unconstitutional because he was at heightened risk of contracting valley fever, did in fact contract valley fever, and now must suffer the effect for the rest of his life. Thank you, Your Honor. Thank you, counsel. We'll hear from the May it please the court, David Goodwin, Deputy Attorney General appearing on behalf of the defendant's appellees in both appeals. The court should affirm the judgments below for four reasons. First, the appellees are entitled to qualified immunity because in 2009 and 2010, the law was not clearly established that subjecting an inmate to heightened exposure of valley fever violated the Eighth Amendment. Second, appellees are entitled to qualified immunity because Mr. Oden cannot plausibly allege that the appellees knew of and disregarded a substantial risk of serious harm. Third, there was no abuse of discretion in denying Mr. Oden appointment of pro bono counsel because he was able to, capable of articulating his claims and because he did not have a reasonable likelihood of success on the merits. And fourth, there was no abuse of discretion in denying Mr. Oden appointment of a neutral expert because it would not have impacted the qualified immunity analysis on the motion to dismiss. I'd like to devote my time to the qualified immunity issues, but I would be happy to answer any questions the court may have about appointment of counsel or appointment of a neutral expert. So first, the law was not clearly established in 2009 and 2010 that subjecting an inmate to heightened exposure of valley fever violated the Eighth Amendment. To be clearly established, a legal principle must have a sufficiently clear foundation in the then existing precedent and not simply suggested by then existing precedent. That right must be defined with specificity and not at a high level of generality. Neither the Supreme Court nor this court has addressed the requirements for stating an Eighth Amendment claim based on exposure to valley fever. This was true in 2009, was true in 2010, and it's still true today. The lower courts therefore correctly concluded that appellees were entitled to qualified immunity because the law was not clearly established. Also, did Hines clearly establish the law regarding qualified immunity regarding exposure to valley fever such that today there might be a different outcome if a lawsuit were filed? No, Your Honor. Hines found that the right to be free from heightened exposure to valley fever was not clearly established at that time, and it found that for three did not clearly establish that their actions violated the Eighth Amendment. Second, because the PLATA receiver oversaw the delivery of medical care to the state's prisoners and protective measures regarding valley fever, Hines said that state officials could have reasonably believed that their actions were constitutional so long as they complied with orders of the receiver and the PLATA court. And I'll come back to that, but the third independent reason is because millions of people still live in the Central Valley. Society is not at the point where they've accepted that nobody should be unwillingly exposed to this risk. Now coming back to the PLATA receiver issue, I know my friends on the other side make this a big issue in their case. What's important to note is that the PLATA receiver was instituted to oversee the delivery of all health care to the state's prisoners up and down the state. The PLATA receiver institutes policies and procedures for the delivery of that health care. The receiver's memorandum does not establish clearly established law for a couple reasons. First, we know that the standard for establishing clearly established law, we have to have precedent from the courts. We simply didn't have that at the time in 2007. Second, the receiver's policies and procedures are to deliver good health care, not the bare minimum of health care. The receiver doesn't determine what type of health care satisfies the Eighth Amendment and what doesn't satisfy it. Now we know that the receiver's policies don't go below Eighth Amendment standards, but that's not to say that they don't go higher than what's required by the Eighth Amendment. It's important to note that it's for the job of the courts to determine what breaches the Eighth Amendment and what states a claim, not for the receiver. But the third point that I want to bring up... Well, counsel, part of the Hines analysis was the fact that the officials reasonably relied on the receiver's assessment of what was required. That's correct, Your Honor. And that brings me to my third point. This same argument was made in the Smith case, which was one of the consolidated cases in Hines. The Smith case was brought on behalf of over 100 inmates. And almost all of them, the basis of their claim is that they were at some heightened risk if they were exposed to Valley fever. The Smith court specifically looked at the 2007 memorandum, the receiver's policies, and still found that the officials were entitled to qualified immunity. Hines affirmed the decision in Smith. And so coming back to the Smith case, Smith found that even against the backdrop of this 2007 memorandum, even if there was a breach of that memorandum, the officials were still entitled to qualified immunity. And the reason why is because, again, the law was not clearly established at the time that heightened exposure to Valley fever or heightened risk of contracting Valley fever violated the Eighth Amendment. But even hypothetically assuming that the 2007 memorandum from the receiver is considered an order from that court, it's still not clearly established because it can only be covered, well, it arises throughout the entire Southwest of the United States. Most of it, in fact, occurs in Arizona. It also occurs in New Mexico. It also occurs in Texas. And so at the time in 2009 and 2010, which were the critical years in this case, the law was not clearly established such that the appellees would have known that housing Mr. Oden at Kern Valley State Prison would have violated the Eighth Amendment. Also, if the record were clear that on his medical records, he was designated as being particularly susceptible to Valley fever, would that have made a difference? That's a closer question, Your Honor, but the court doesn't have to address that because if we look at the medical records in this case, and what the custody officers would have evaluated when determining whether Mr. Oden should be housed at Kern Valley, no reasonable officer would believe that he shouldn't be housed there. Well, opposing counsel pointed out that the position of the state at one point was that the colonel was illegible. Why wouldn't that raise an issue of fact? Several reasons, Your Honor. And first off, that was me who said that in the lower court. So the context of that was that I stated that on reply in my motion to dismiss with my primary focus on Mr. Oden's claims that he couldn't be housed there because of his ethnicity and because of his asthma. But setting that aside for a moment, since the case has gone on- Well, but you didn't point out the yes and no part of it, the why and the in. So why isn't there a question of fact regarding what that meant if you didn't point out that that was an indicator that he was not at a higher risk of valley fever? Several reasons, Your Honor. First off, my friends on the other side, don't take any contradictory interpretation of that document. The court, as it acknowledged, can read the rest of the contents of that document. It's still clear that it would not have given notice to the appellees that Mr. Oden was at risk. I refer the court to Excerpt of Record 94. And if the court looks at the 2007 memorandum and compares it to this document, it'll see that it's quite clear that this does not fall within the 2007 memorandum's criteria for acknowledging valley fever. And with that, the law still was not clearly established at the time, and we ask this court to affirm the judgments below. Thank you. Mr. Goodwin, why is it appropriate to consider that chrono given the fact that we're talking about a dismissal on the pleadings? Well, Mr. Oden attached that chrono to several of his complaints. That chrono forms the basis of his case, and that chrono contradicts the allegations in his complaint. Was it attached to the operative complaint? Yes, Your Honor. So the court can consider it. The court should acknowledge that it contradicts his claims. And even in light of all of that, we still fall back on the qualified immunity issue. Thank you. Counsel, I'm looking at page 94 of the record. What on page 94 clearly establishes that he was not at high risk? Several reasons, Your Honor. So Mr. Oden's theory... Just tell me on this. You cited us to page 94. What on this page clearly establishes that he is not at high risk? The medical doctor who filled out this form did not specifically identify the criteria in the 2007 memorandum, and they were required to do that. But it's not clear from this form. You said this form would clearly establish that he is not at heightened risk. Well, again, turning back to the fever with a circle around the end, setting that aside, first, it does not list the criteria in the 2007 memorandum, which it was required to do. It does not show that Mr. Oden required any routine follow-up. It does not show that Mr. Oden required any urgent follow-up. It does not show that Mr. Oden had any communicable diseases. And it does not show that he had tuberculosis at the time this was filled out. There's no reason why... Again, we're talking about custody officials. If a custody official is looking at this document that's from a medical provider, there's no reason why they would have known that Mr. Oden was at high risk. That may be true, but this document does not clearly establish one way or the other whether or not he was at heightened risk, just looking at this document. They'd be interpreting this document the way you interpreted it, which is that conclusion. But when you cited to this document as being clear, I thought there was going to be something that a smoking gun, so to speak, in this document, and there isn't. Yes, Your Honor. I'll defer to the court's interpretation with the why in the end. Thank you. Thank you. Your Honor, I would like to address three points. First, the issue of the eligibility of yes versus no, whether or not the PLATA order can be counted as clearly established law, and the issue of a case directly on point for qualified immunity. First, Your Honor, the issue of the eligibility of the medical chrono is one that could have been appellant could have taken the deposition of the officials. He could have taken the deposition of the medical official who completed that, but he was not given the opportunity to do so at this procedural posture. All allegations must be taken as true and in the light most favorable to the non-moving party. And as a pro se litigant, the pleadings must be construed liberally. Your Honor, opposing counsel states that the November 2007 memorandum cannot be clearly established law. It is not our position that the order itself is law. Our position is that the order encompasses already established Eighth Amendment law, such as Hamilton and Helen, which states that inmates cannot be exposed to a substantial risk to their health and safety. The PLATA receiver was ordered by the court to address rampant Eighth Amendment violations in the California prison system. And this was one way to deal with known Eighth Amendment violations. And as to qualified immunity, to determine whether the law was clearly established at the time of the violation, there need not be a reported case directly on point, but the unlawfulness of the factual situation so far as the constitutional violation is clear. This court has denied qualified immunity even when there was no clearly established law or the factual allegations established with obvious clarity that the officers increased the danger and acted with deliberate indifference. Your Honors, may I wrap up this thought? Yes. The Supreme Court recently adopted the standard in Taylor v. Roscoe, clarifying that the standard for clearly established law is not whether a case addressing the same exact set of facts exists. But rather whether a general constitutional rule already identified may apply with obvious clarity to the specific conduct in question. Here, although there might not be a case with exact factual allegations on point, there is plenty of established Eighth Amendment case law that protects inmates from being transferred when there is a substantial risk to their health and safety. Thank you, Your Honors. All right. Thank you, counsel. And we particularly would like to thank Mr. Hoffman and the UC Irvine law students for participating in this case and providing us with the argument. Thank you very much. This just argued is submitted for decision by the court.
judges: Rawlinson, Linn, Hunsaker